UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| MM 130 BOWERY REST. CORP., | ) ) | Bankr. Case No.: 14-11988 (ALG) |
| Debtor. | ) ) ) |  |

**INTERIM ORDER AUTHORIZING THE USE OF CASH COLLATERAL,
PROVIDING ADEQUATE PROTECTION, AND GRANTING RELATED RELIEF**

**WHEREAS,** on July 3, 2014 (the "Petition Date"), MM 130 Bowery Rest. Corp. (the "Debtor") filed with this Court a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

**WHEREAS,** the Debtor has continued in the management and operation of its business pursuant to Bankruptcy Code §§ 1107 and 1108, and no trustee or examiner has been appointed, in this case (the "Chapter 11 Case"); and

**WHEREAS,** the Debtor has filed a motion (the "Motion") with the Court for authority, pursuant to Bankruptcy Code § 363, to use the Cash Collateral (as such term is defined in Bankruptcy Code § 363(a)), of Valley National Bank ("Valley") pursuant to the budget annexed as Exhibit A to the Motion and all extensions thereof agreed to in furtherance thereof (the "Budget") and this Order (collectively, the Budget, this Order, and any final order entered by the Court with respect to the Motion (a "Final Order"), shall be referred to hereinafter as the "Cash Collateral Documents"); and

**WHEREAS,** the Debtor has admitted, represented, and stipulated to the Court, without prejudice to the rights of third parties set forth in this Order, the following (collectively, the "Admissions"):

(a) pursuant to a term note and security agreement (the "Pre-Petition Agreements"), each dated August 23, 2013, Valley made a term loan to the Debtor in the principal amount of $500,000;

(b) as of the Petition Date, (1) the Debtor was indebted to Valley, without defense, counterclaim, recoupment, or offset of any kind, in the principal amount of $402,433.35 (such principal amount, together with all interest, fees, costs, expenses, including attorneys' fees and costs, and other amounts heretofore or hereafter accruing thereon or at any time chargeable to Debtor in connection with the Pre-Petition Agreements, is collectively referred to herein as the "Pre-Petition Obligation"), and (2) the Pre-Petition Obligation was secured by valid, enforceable, properly perfected, and unavoidable first priority liens (the "Pre-Petition Liens") on and security interests in all of the Debtor's present and future right, title, and interest in and to any and all personal property of the Debtor (as described with specificity in the Pre-Petition Agreements, the "Pre-Petition Collateral");

(c) Valley is willing to consent to the Debtor's use of the Pre-Petition Collateral and Cash Collateral only upon the terms, conditions and provisions contained in this Order;

(d) the Debtor reasonably and in good faith believes that the use of Cash Collateral and other financial accommodations to be obtained pursuant to the Cash Collateral Documents are sufficient to fund all projected legitimate and allowable expenses of its Chapter 11 Case from the Petition Date during the period to which the Budget pertains;

(e)     pursuant to the Bankruptcy Code and in light of the foregoing, the Debtor is required to and shall provide adequate protection to Valley in respect of the Debtor's use of its collateral;

and

**WHEREAS,** the Court held an interim hearing with respect to the Motion on August 12, 2014 (the "Interim Hearing"); and the Court, having considered the Motion and the proceedings before the Court at the Interim Hearing; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court as reflected on the record of the Interim Hearing;

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

(a)     the Debtor has given notice of the Interim Hearing, and the interim relief sought in the Motion, pursuant to Bankruptcy Rule 4001(b)(2), and that the notice was, in the Debtor's belief, the best available and reasonable under the circumstances;

(b)     the Court has core jurisdiction over the Debtor's bankruptcy case, the Motion, and the parties and property affected by this Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409;

(c)     it is in the best interest of the Debtor's estate that it be allowed to use the Pre-Petition Collateral and Cash Collateral, on an interim basis under the terms and conditions set forth herein, as such is necessary to permit the orderly administration of the Debtor's estate;

(d)     good and sufficient cause exists for the issuance of this Order, to prevent immediate and irreparable harm to the Debtor's estate;

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.  The Motion is granted on an interim basis effective as of July 3, 2014 to the extent and subject to the terms set forth herein with the foregoing findings incorporated herein by reference, and the Debtor and Valley consent and stipulate thereto. The Debtor is authorized, pursuant to Bankruptcy Code § 363, to use the Cash Collateral in accordance with the Budget and to use the Pre-Petition Collateral, Cash Collateral, and the proceeds and products thereof pursuant to the terms and conditions of the Cash Collateral Documents.

2.  As adequate protection for the Debtor's use of Cash Collateral and any post-petition diminution in value of Valley's interests in the Pre-Petition Collateral, including without limitation that caused by the Debtor's use of Cash Collateral, the Debtor shall pay Valley the monthly $11,359.45 payments in accordance with the Pre-Petition Agreements, such payments commencing on or about August 11, 2014, and continuing thereafter on August 23, 2014 and on the 23rd day of each succeeding month.

3.  As further adequate protection for the Debtor's use of Cash Collateral and any post-petition diminution in value of Valley's interests in the Pre-Petition Collateral, including without limitation that caused by the Debtor's use of Cash Collateral, Valley is hereby granted a post-petition claim (the "Adequate Protection Claim") against the Debtor's estate.

4.  Pursuant to Bankruptcy Code § 363, the Adequate Protection Claim and any and all post-petition obligations of the Debtor to Valley pursuant to the Cash Collateral Documents (collectively, the "Post-Petition Claim") shall be allowed administrative expenses of the Debtor's estate, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtor and over all administrative expenses or charges against property arising in the Debtor's Chapter 11 Case, including, without limitation, those

specified in Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 1113, or 1114, subject only to the Carve-Out, provided that the Post-Petition Claim shall not be payable from the Avoidance Actions or recoveries of any Challenge (as such terms are defined below).

5.  Pursuant to Bankruptcy Code § 363, as security for the Post-Petition Claim, the Debtor is hereby authorized to and is hereby deemed to grant to Valley a valid, binding, and enforceable lien, mortgage, and/or security interest (a "Lien," and as so granted to Valley, the "Post-Petition Lien") in all of the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "Collateral," and to the extent created, acquired, or arising after the Petition Date, the "Post-Petition Collateral"). Notwithstanding the foregoing, the Collateral shall not include causes of action brought pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 549, 550, and 553, 724(a), and recoveries upon or proceeds of such causes of action (collectively, the "Avoidance Actions"), but shall include other causes of action of the Debtor that are not within the scope of said statutory provisions.

6.  The Post-Petition Lien shall have the following priority with respect to the Collateral:

   (a)  first priority as to (1) all Pre-Petition Collateral that as of the Petition Date was not subject to (A) valid, enforceable, properly perfected, and unavoidable Liens or (B) valid, enforceable, and unavoidable Liens that are perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted by Bankruptcy Code § 546(b), and (2) all Post-Petition Collateral; and

      (b)    the Post-Petition Lien shall not be subject or subordinate to (1) any Lien which is avoided and which would otherwise be preserved for the benefit of the Debtor's estate under Bankruptcy Code § 551, or (2) any Lien arising after the Petition Date, and shall not be subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise.

    7.    The automatic stay provisions of Bankruptcy Code § 362 are hereby modified to permit (a) the Debtor to implement and perform the terms of this Order, and (b) the Debtor to create, and Valley to perfect, the Post-Petition Lien and any other Liens granted hereunder. The Debtor and Valley shall not be required to enter into any additional security agreements to create, memorialize, and/or perfect the Post-Petition Lien, or to file UCC financing statements or other instruments with any other filing authority or take any other action to perfect the Post-Petition Lien, which shall be and is deemed valid, binding, enforceable, and automatically perfected by the docket entry of this Order by the Clerk of this Court. If, however, Valley in its sole and absolute discretion shall elect for any reason to enter into, file, record, or serve any such financing statements or other documents with respect to the Post-Petition Lien, then the Debtor shall execute same upon request and the filing, recording, or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of this Order by the Clerk of the Court.

    8.    Notwithstanding Valley's pre-petition and post-petition claims and Liens and the Budget, the Debtor may use the Collateral, including Cash Collateral, to pay (the following subparagraphs, collectively, the "Carve-Out"):

(a) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and any unpaid fees due and owing to the Clerk of the Court (collectively, the "Statutory Fees"); and

(b) the allowed fees and expenses of the professionals retained by the Debtor in an amount not exceeding $40,000 (exclusive of any retainers), and by any Official Committee of Unsecured Creditors (the "Committee") in an amount not exceeding $10,000, whose retentions are approved pursuant to final orders of the Court (the "Chapter 11 Professionals"), subject to the limitations on the use of such funds set forth in this Order;

(c) the allowed fees and expenses of any Chapter 7 Trustee under Bankruptcy Code § 726(b), including without limitation the allowed fees and expenses of the professionals retained by the Chapter 7 Trustee and approved by final orders of the Court, in an amount not exceeding $10,000.

The Carve-Out amounts shall be excluded from the Budget. Any amounts paid from the Collateral or the proceeds thereof, or funded by Valley, with respect to the Carve-Out shall be afforded Post-Petition Claim status and shall be secured by the Post-Petition Lien.

9. Effective as of the time of commencement of the Debtor's bankruptcy case on the Petition Date, upon the entry of a Final Order containing such provision:

(a) the Debtor waives irrevocably all claims and rights, if any, it might otherwise assert against the Collateral pursuant to Bankruptcy Code § 506(c);

(b) except from and pursuant to the terms of the Carve-Out, no entity in the course of the Debtor's bankruptcy case shall be permitted to recover from the Collateral (whether directly or through the grant of derivative or equitable standing in the name of

- 7 -

the Debtor or the Debtor's estate) any cost or expense of preservation or disposition of the Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code § 506(c); and

(c) no entity shall be permitted to recover from the Collateral, or assert against Valley, any claim with respect to any unpaid administrative expense of the Debtor's bankruptcy case, whether or not the Debtor's payment of such administrative claim was contemplated by or included in the Budget.

10. So long as the Pre-Petition Obligation or the Post-Petition Claim (collectively, the "Obligations") remain outstanding, unless consented to in writing by Valley, the Debtor shall not seek entry of any further orders in the Chapter 11 Case which authorize (a) under Bankruptcy Code § 363, the use of Cash Collateral in which Valley has an interest, (b) the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code §§ 364(c) or 364(d) (unless such credit shall be used to repay the Obligations in full), or (c) any other grant of rights against the Debtor and/or its estate, secured by a Lien in the Collateral or entitled to priority administrative status which is equal, *pari passu* or superior to that respectively granted to the Post-Petition Claim or the Post-Petition Lien.

11. Each of the following shall constitute an "Event of Default" for purposes of this Order:

(a) the Court enters an order, the effect of which has not been stayed, granting relief from the automatic stay to a third party with respect to material assets of the Debtor's estate, unless Valley has given prior written consent to such relief;

(b) the Debtor ceases operations of its present business or takes any material action for the purpose of effecting the foregoing without the prior written consent of Valley, except to the extent contemplated by the Budget;

(c) the Chapter 11 Case is either dismissed or converted to a Chapter 7 case pursuant to an order of the Court, the effect of which has not been stayed;

(d) a Chapter 11 trustee, or an examiner with materially expanded powers beyond those set forth in Bankruptcy Code §§ 1106(a)(3) and 1106(a)(4), or any other responsible person or officer of the Court with similar powers is appointed by order of the Court, the effect of which has not been stayed, in the Chapter 11 Case;

(e) this Order is reversed, vacated, stayed, amended, supplemented, or otherwise modified in a manner which materially and adversely affects the rights of Valley hereunder or materially and adversely affects the priority of any or all of the Obligations or Valley's Liens;

(f) (1) the Debtor expends any funds or monies for any purpose other than those set forth on the Budget without Valley's consent or (2) the Debtor expends any funds or monies in excess of the amounts authorized in the Budget, provided that for the cumulative Budget periods which have occurred the Debtor's actual cash disbursements may be up to fifteen percent (15%) more than the cumulative budgeted amount for cash disbursements through the conclusion of such Budget periods without such expenditures constituting an Event of Default;

(g) the occurrence of a material adverse change from and after the Petition Date, except to the extent contemplated by the Budget, including, without limitation, any such occurrence resulting from the entry of any order of the Court, in each case as

determined by Valley in its reasonable discretion, in (1) the condition (financial or otherwise), operations, assets, business, or business prospects of the Debtor, (2) the Debtor's ability to repay the Obligations, and/or (3) the value of the Collateral;

(h) any material misrepresentation by the Debtor in any financial reporting provided by the Debtor to Valley;

(i) non-compliance or default by the Debtor with any of the terms and provisions of this Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtor within ten business days after notice of such non-compliance or default is given to the Debtor by Valley.

12. Upon the occurrence of an Event of Default and the giving **of** written notice thereof by Valley to counsel to the Debtor, any Committee and the U.S. Trustee, which notice may be given by any manner of electronic transmission, the automatic stay being deemed lifted for such purpose (the "Default Notice"):

(a) Valley shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of the Bankruptcy Code or applicable law or rule, to take immediate reasonable action to protect the Collateral from harm, theft, and/or dissipation;

(b) with respect to an Event of Default as to which a Default Notice has been given, the Debtor, any Committee and the U.S. Trustee shall have seven calendar days from the receipt of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court on notice to Valley enjoining or restraining Valley from exercising rights and remedies based upon the Event of Default specified in the Default Notice ("Restraint on Remedies"); and

(c) with respect to an Event of Default as to which a Default Notice has been given, immediately upon expiration of the Remedy Notice Period, unless a Restraint on Remedies has timely been obtained from the Court, (A) the Debtor's use of the Collateral (including, without limitation, Cash Collateral) pursuant to this Order and the Budget shall cease, subject to the Carve-Out and (B) Valley shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of the Bankruptcy Code, to exercise contractual, legal, and equitable rights and remedies as to all or such part of the Collateral as Valley shall elect.

13. The Debtor shall provide Valley with (a) a rolling thirteen week cash flow forecast no later than Monday of each week in a form similar to the Budget and (b) a weekly report no later than Monday of each week showing the Debtor's actual cash receipts and disbursements for the prior week and the variances between such actual amounts and the amounts set forth in the Budget for such Budget period. Copies of such written reports shall be contemporaneously provided to any Committee.

14. Valley shall have the right, at any time during the Debtor's normal business hours or as otherwise agreed by the parties, to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence, and other records of the Debtor, and to inspect, audit, and monitor all or any part of the Collateral and the Debtor's business premises, and the Debtor shall make all of same reasonably available to Valley and its representatives, and shall cause its personnel and representatives to cooperate with Valley and its representatives, for such purposes. Valley and its representatives may, without Valley being deemed to be in control of, or a fiduciary for, the Debtor, and without obtaining prior consent from the Debtor, (1) discuss the Debtor's books and records, the

Collateral, the Budget, and the Debtor's business operations with the Debtor's directors, officers, retained professionals (including, without limitation, attorneys, accountants, investment bankers, and financial restructuring or workout advisors and consultants), and (2) make observations and recommendations to such persons regarding the Debtor's books and records, the Collateral, the Budget, or the Debtor's business operations.

15. Without prejudice to the rights of third parties to the extent set forth in the following paragraph of this Order:

(a) the Admissions shall be binding upon the Debtor in all circumstances;

(b) the validity, extent, priority, perfection, enforceability, and non-avoidability of Valley's pre-petition claims against the Debtor and/or Pre-Petition Liens shall not be subject to challenge by the Debtor;

(c) the Debtor shall not seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of Valley prior to the Petition Date; and

(d) the Debtor hereby waives all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs, or other rights that it may have to contest:

(1) any defaults or events of default (as defined in the Pre-Petition Agreements) which were or could have been declared by Valley as of the Petition Date;

(2) any provisions of the Pre-Petition Agreements;

(3) the amount of the Pre-Petition Obligation on the Petition Date; or

    (4)  the conduct of Valley and its directors, officers, employees, agents, attorneys, and other professionals (collectively, the "Valley Parties") in administering the pre-petition business relationship between the Debtor and Valley, including without limitation "equitable subordination," "lender liability," and/or "deepening insolvency" claims and causes of action.

Valley shall have no Carve-Out obligations to the Debtor or to any of the Debtor's Chapter 11 Professionals with respect to any investigation or litigation (whether threatened or pending) by the Debtor with respect to any matter released, waived, or specified as not subject to challenge by the Debtor pursuant to this paragraph. As used in this paragraph, "Debtor" shall include the Debtor's successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code, but shall not include any Committee.

  16.  Notwithstanding the Debtor's release and waiver set forth in the preceding paragraph of this Order, any Committee shall have 60 days (or such longer period as any Committee may obtain for cause shown before the expiration of such period) from the date of entry of the Final Order to commence an adversary proceeding against any of Valley Parties for the purpose (collectively, a "Challenge") of:

    (a)  challenging the validity, extent, priority, perfection, enforceability and non-avoidability of Valley's pre-petition claims against the Debtor and/or Liens;

    (b)  seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of Valley prior to the Petition Date; and/or

(c) seeking damages or equitable relief against Valley arising from or related to the pre-petition business relationship between the Debtor and Valley, including without limitation "equitable subordination," "lender liability," and/or "deepening insolvency" claims and causes of action.

Any Committee is hereby granted standing to commence a Challenge without further authorizing order of the Court. Any other party in interest shall have 60 days (or a longer period for cause shown before the expiration of such period) from the date of entry of the Final Order to move this Court for an order granting it standing to commence a Challenge. All parties in interest, including, without limitation, any Committee, that fail to act in accordance with the time periods set forth in the preceding paragraph shall be, and hereby are, barred forever from commencing a Challenge. If no such adversary proceeding or motion is filed during such period: (i) the Pre-Petition Obligation shall constitute an allowed claim (provided that Valley shall file a proof of claim) against the Debtor and shall not be subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise and (ii) the Pre-petition Liens shall be deemed legal, valid, binding, enforceable, duly perfected, not subject to defense, counterclaim, offset of any kind, or subordination, and otherwise unavoidable.

17.  The Valley Parties' legal and equitable claims, counterclaims, defenses, and/or rights of offset and setoff in response to any such Challenge are reserved, and the ability of a party to commence a Challenge shall in no event revive, renew, or reinstate any applicable statute of limitations which may have expired prior to the date of commencement of such Challenge. Despite the commencement of a Challenge, Valley's pre-petition claims and Liens

shall be deemed valid, binding, properly perfected, enforceable, non-avoidable, not subject to disallowance under Bankruptcy Code § 502(d), and not subject to subordination under Bankruptcy Code § 510 until such time as a final and non-appealable judgment order and judgment entered sustaining such Challenge in favor of the plaintiffs therein. Nothing contained herein shall limit the Court's ability to fashion an appropriate remedy should the Court determine, by entry of a final and non-appealable order and judgment, a Challenge in favor of the plaintiffs therein. Valley shall have no Carve-Out obligations to any person or entity (including without limitation any Committee) or to any Professional of such person or entity with respect to any pending or commenced Challenge, but the Carve-Out may be used by any Committee to investigate any matter for which a Challenge may be properly commenced.

18. This Order shall be binding upon and inure to the benefit of Valley, the Debtor, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code. Except as expressly set forth herein, no rights are created under this Order for the benefit of any third party or any direct, indirect or incidental beneficiaries thereof.

19. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code. The terms and provisions of this Order, as well as the Post-Petition Claim and the Post-Petition Lien, shall continue in this or any superseding case under the Bankruptcy Code, and shall continue notwithstanding any dismissal of the Debtor's bankruptcy case, and such claims and Liens shall maintain their priority as provided by this Order until the Obligations are irrevocably

satisfied in full. Except as otherwise provided in this Order, no Proceeds, Cash Collateral, or Carve-Out may be used by any party in interest seeking to modify any of the rights granted to Valley without Valley's prior written consent.

20. To the extent that any of the provisions of this Order shall conflict with any of the provisions of the Pre-Petition Agreements, this Order is deemed to control and shall supersede the conflicting provision(s). To the extent that any of the provisions of this Order shall conflict with any order of the Court authorizing the Debtor to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then this Order is deemed to control and supersede the conflicting provision(s) in said orders.

21. The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the clerk of this Court notwithstanding any potential application of Fed. R. Bankr. P. 6004(h) or otherwise.

22. A final hearing with respect to the Motion is scheduled for September 17, 2014 at 10:00 a.m. (the "Final Hearing"). The Debtor shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with the Court and to any Committee after the same has been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon: (a) McGrail & Bensinger LLP, 676A Ninth Ave. #211, New York, New York 10036, Attn: David C. McGrail, attorneys for the Debtor; (b) Stein Riso Mantel McDonough, LLP, The Chrysler Building, 42nd Floor, 405 Lexington Avenue, New York, New York 10174, Attn: Mark Chinitz, Esq., attorneys for Valley; and (c) the Office of the United States Trustee for the Southern District of New York, and which objections shall be filed with the Clerk of the

Court, in each case so as to be received no later than 4:00 p.m. (prevailing Eastern Time) seven days before the date of the Final Hearing.

Dated: New York, New York
       August 12, 2014

                                            **s/Allan L. Gropper**
                                            The Honorable Allan L. Gropper
                                            United States Bankruptcy Judge